## UPPER MILFORD *against* LOWER MACCUNGIE.

CERTIORARI.

Whether a person of weak capacity may gain a settlement by a contract of hiring.

Under what circumstances a settlement by birth may be regained.

ON the return of a *certiorari* to the Court of Quarter Sessions of Lehigh County, to remove the proceedings on an appeal by the overseers of the poor of the township of Upper Milford, against the overseers of the poor of the township of Lower Maccungie, the following facts appeared.

On the 10th of January, 1837, on application of the overseers of Upper Milford, Peter Cooper and Philip Person, Esqrs. justices of the peace, granted an order for the removal of Gertraut Weaver, as a pauper, from the township of Upper Milford to the township of Lower Maccungie, in the county of Lehigh. From this order the overseers of the poor of Lower Maccungie appealed to the Court of Quarter Sessions of the said county—in which court Jacob Dillinger Esq., was by consent, appointed commissioner to take testimony; and he returned the following depositions:

Barbara Grandykowski, sworn: "About eight years ago, Gertraut Weaver the pauper came to live with us. My husband, Frederick Grandykowski, was then living. We lived in Lower Maccungie township, Lehigh county. She had previously lived with her brother, Jacob Weaver. She was poor, and we had no children, and no girl. Her brother was lame. We went and brought her. We told her she should come and live with us, and work for us a while: we would give her her boarding and clothes. She came and lived with us for about a year and a half in Lower Maccungie township. She worked a little. She earned her victuals. We gave her her boarding and her clothing, what she wanted. We gave her a linen gown, stockings and shoes. She went from our house to John Breinig's, in Upper Milford. We had no bargain. I merely told her we would give her her boarding and clothing. She lived with us about one year and a half. I gave her these things out of friendship, so that she should not be so much of a charge to her *brother. She    [*72] might have been able perhaps to earn victuals and clothes at that time. She had not her understanding."

Jacob Shuler, affirmed: "I live in Lower Maccungie township, Lehigh county. Gertraut Weaver came to live with me in 1830, and staid with me a little better than a year. She then left me,

(Upper Milford *v.* Lower Maccungie.)

staid away from spring to fall, and came back again; told me she had no home, and would stay with me again. I kept her. I told her sometimes to go away, but she did not go, and staid with me till within three months from this time last past. I gave her some clothes, such as her sister did not give her, and what she was obliged to have. Her sister in Philadelphia told me to keep her; she would send her clothes. She did send her some. I kept her out of friendship for her mother and sister. She worked what she was able. She cannot do all kinds of work. She is not fit to do housework, except to sweep. She can work in the field a little, if she has company to work with. I do not think that she has her senses, or that she is fit to make a bargain. She sometimes would set the table for our family, when we were alone, but when we had strangers she could not tell how many plates to set even when she was told the number. We had no bargain of any kind, or for any time. I did not promise her sister that I would keep Gertraut. I had no bargain."

Sarah Meyer, sworn: "I live in Upper Milford, Gertraut Weaver served with us. The mother of Gertraut took her to the overseers. Hagenbach, one of the overseers of Milford, bound her to us. I think she was eight years old, and staid with us till she was eighteen. We lived in Upper Milford all the time. We had a written agreement, (indenture). We gave her a bed, chest, spinning-wheel—sent her to the Lord's Supper, to school, and gave her a freedom suit. She was not a smart girl; she could not work well. She served her time out. I don't think she is fit to make a bargain, or to testify under oath. I don't know how long ago it was that she became free, and left us."

Maricha Weaver, sworn: "I live in Upper Milford township. Gertraut will be thirty-seven years old next harvest. Gertraut was born in Upper Milford township. She was eight years old when she was bound to Abraham Meyer, of Upper Milford, by the overseers of Milford township. We lived in Maccungie then. We lived in Maccungie about seven years before she was bound. She was a small child when we moved from Upper Milford to Maccungie. I don't think she is as she ought to be in respect to her understanding: We never hired her to any body in Maccungie. She was at Shuler's in Maccungie a good while before I knew that she was there. I had a bargain for a short time, a few months, after she was free, with William Meyer in Upper Milford for Gertraut. I think Meyer was to give her two dollars a month. I got no money. She got it in clothes. We [*73] did *not own any land in Maccungie, but in Upper Milford township we owned some. My husband's name was John Weaver."

Clarissa Breinig sworn: "Gertraut Weaver lived with us

(Upper Milford *v.* Lower Maccungie.)

about one year and a half.   She came to our house from Grandi-
nowski's.   We lived in Upper Milford township.   This was about
seven years ago.   We had no bargain with her.   We wanted a
girl then, and the neighbours told us to get her.   We gave her
boarding and some clothing—such as frocks, shirts, &c.   We
gave her no money.   She went from our house to Shuler's.   We
did not fetch her.   We sent her word to come.   I am not related
to her.   I don't think she has her understanding.   She is trou-
blesome in the family—not better than a small girl.   I was glad
to let her go away, but would have kept her longer if no one had
taken her away."

Conrad Meyer, sworn:  "Gertraut Weaver, the pauper, lived
at our house once with my father.   What she got, I don't know.
I think she got a bed.   She was bound by indenture.   I don't
know how long ago it was.   I was young yet.   I don't think
she has her understanding as she ought to have.   She was al-
ways so."

Henry Eisenhart, sworn:  "I know Gertraut Weaver.   She
lived at Shuler's, in Maccungie township, a good while.   She
came to my house often.   I live in Lower Maccungie township.
I don't think she is competent to take an oath.   She has not
her understanding as she ought to have.   She can't make a bar-
gain.   I don't know that she ever worked for me.   She was
sometimes sent to my store.   She came to my house often with-
out business.   She would play with the children."

On the 2d of February, 1837, the Court of Quarter Sessions
quashed the order of removal, with costs and charges to the ap-
pellants.

The overseers of the poor of Upper Milford township there-
upon sued out the present certiorari, and assigned the following
error in the judgment of the court below:

"That the evidence established a settlement by hiring and
service in the township of Lower Maccungie; and the court
should therefore have confirmed the order of removal instead of
quashing the same."

Mr. *Porter*, for the appellants, contended, that the evidence
proved that a settlement was gained by the pauper in Lower
Maccungie township.   The act of 1836 declares that a settle-
ment may be gained "by any unmarried person not having a
child, who shall be lawfully bound or hired as a servant within
the district, and shall continue in such service during one whole
year."   The former act of assembly and the British statutes use
nearly the same language.   It is settled that it is not necessary
that the hiring should be expressly for the *term of a
year, if the service was for that time.   The objection here   [*74]

(Upper Milford *v.* Lower Maccungie.)

was to the want of capacity on the part of the pauper to make a contract. But persons of weak capacity may make contracts for their own benefit; and where they have made such contracts and performed their part, they have been enforced. Chitty on Contracts, 30, 256; *Bagster* v. *Earl of Portsmouth,* (5 Barnw. & Cresw. 170); *Tioga* v. *Lawrence,* (2 Watts, 43.) The evidence shows a sufficient hiring. It is not necessary that there should be a contract in writing, nor any formal stipulations. A contract may be implied from the fact of service. *Gregory Stoke* v. *Bedminster,* (2 Bott's P. L. 183); *Rex* v. *Thames Ditton,* (4 Douglas, 300); 2 Bott's, 209; Caldwell's P. L. 516; Burrow's Settl. Cas. no. 107, p. 299, no. 160, p. 502; *Rex* v. *Chertsey,* (2 Term Rep. 37).

Mr. *Davis* and Mr. *Scott,* for the appellees.—The pauper was born in Upper Milford, and served an apprenticeship there, and her parents owned land in that township. That was the place of her original settlement; and the evidence does not show that she gained any other settlement. It is clear that she had not sufficient capacity to make a contract. She could not have been compelled to perform her part, if any was made. The case of an infant is not analogous; since the township which binds him is capable of contracting.

The opinion of the Court was delivered by

HUSTON, J.—It does not seem to be necessary to decide under what circumstances, in all cases, an idiot may acquire a settlement by hiring. Cases may occur in which there will be difficulty. The pauper, in this case, had a settlement in Upper Milford. This is admitted. But it is said she afterwards acquired a settlement in Lower Maccungie by living with Grandinowski more than a year; and that he gave her her victuals and clothes for her labour. If we admit that this gave her a settlement, we next find her more than a year in Upper Milford at Breinig's—and here again she receives food and clothing for her services. This brings her settlement again to Milford. There is no pretence of any hiring after this. She went to Shuler's because she had no place at which to stay; he received her, either from charity, or from a promise of partial compensation from her sister. He wished her to go away. She had no place to which to go, until she was delivered to the overseers on his declining longer to keep her. That she was in Lower Maccungie when relief was first necessary, might be a reason for present relief. The place of residence is found, and to that she must be sent. The decision of the court is affirmed.

Order affirmed.

Cited by Counsel, 8 Wright, 61.